IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
BINGHAMPTON CIVIL FILING DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) ) | |
| Plaintiff, | ) ) | COMPLAINT |
| v. | ) ) ) | JURY TRIAL DEMAND<br>Case No.: 3:18-CV-1099 (DNH/DEP) |
| POROUS MATERIALS, INC., | ) ) ) ) | |
| Defendant. | ) ) | |

NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of race, national origin, sex, and retaliation, and to provide appropriate relief to Jessica Howard and similarly aggrieved female employees and employees with a national origin other than the United States. As alleged with greater particularity in paragraphs 17-20, Porous Materials, Inc.'s ("Defendant") owner and Defendant's plant manager subject Howard and other female employees to a hostile work environment including misogynist comments such as "bitches," unwanted sexual advances and comments about employees' bodies, and sex-based criticism of employee performance. Defendant also subjected Howard to a hostile work environment based on race (Black), including the plant manager saying that her husband should be working in a cotton field with a rope around his neck, and then telling her to drink "Kool-Aid" when she became upset. Defendant, through its plant manager, also subjected Howard and other employees with a national origin other than

the United States to a hostile work environment based on national origin, including xenophobic comments about hating immigrants and immigrants stealing American jobs, and mocking and forbidding speaking non-English languages. The plant manager's harassment of Howard culminated in his termination of her employment; he also terminated her employment in retaliation for her repeated complaints about his harassment.

## JURISDICTION AND VENUE

1.        Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-5(f)(1) and (3) ("Title VII") and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.        The employment practices alleged to be unlawful were and are now being committed within the jurisdiction of the United States District Court for the District of Northern New York.

## PARTIES

3.        Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4.        At all relevant times, Defendant, Porous Materials, Inc., has continuously been a New York corporation doing business in the State of New York and the City of Ithaca, and has continuously had at least 15 employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

## ADMINISTRATIVE PROCEDURES

6. More than thirty days prior to the institution of this lawsuit, Jessica Howard filed a charge with the Commission alleging violations of Title VII by Defendant.

7. On July 23, 2018, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that Title VII was violated and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

8. The Commission engaged in communications with Defendant to provide Defendant the opportunity to remedy the discriminatory practices described in the Letter of Determination.

9. The Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

10. On August 13, 2018, the Commission issued to Defendant a Notice of Failure of Conciliation.

11. All conditions precedent to the initiation of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

12. Defendant is an operator and manufacturer of testing equipment for porous materials, with a main facility in Ithaca, New York.

13. Defender's founder owns Defendant and is its CEO.

14. Defendant hired an American-born White male to be a stockroom worker in or about June 2015.

15. That individual was promoted to plant manager, with authority to hire and fire employees, on or about February 8, 2016.

16. Defendant hired Jessica Howard, a Black woman born in France, as a laboratory technician on or about February 29, 2016.

17. Since at least September 10, 2015, Defendant has engaged in unlawful employment practices at its Ithaca location, in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1). These unlawful practices include, but are not limited to, Defendant engaging and continuing to engage in sex discrimination against Howard and other similarly aggrieved female employees working in its Ithaca location by subjecting them to severe or pervasive sex-based harassment, and by creating and maintaining a hostile work environment because of their sex, as follows:

    a. At least once a week, and often on a more frequent basis, Defendant's owner and CEO makes misogynist comments to Defendant's female employees.

    b. Referring to and in front of Defendant's female employees, he calls female employees "dumb women," says that "these women can't do anything," says that women are "very stupid" and worthless, and tells female employees to speak only when spoken to.

    c. He told a female employee that she would not get a raise because she was a woman.

d. He openly discusses his belief that women should perform office jobs.

e. Defendant's plant manager, on a daily basis and often in a loud voice in the middle of Respondent's facility, made abusive misogynist comments.

f. He called female employees "bitches" and complained about female employees "PMS'ing" or getting "their periods" and therefore being unable to do the work performed by men.

g. The plant manager told female employees that women were weaker and inferior, could not perform physical tasks that were a "man's job," and therefore should not be hired for non-office jobs.

h. The plant manager made negative comments about women's intelligence.

i. The plant manager also made unwanted sexual advances and sexual comments to female employees.

j. He said he liked female employees' "buns," "curves," and clothing, and told female employees they were "sexy."

k. The plant manager stood uncomfortably close to female employees, and pressured them to socialize with him.

l. He repeatedly told female employees that another female employee was "fat" and "disgusting," and wondered aloud how that employee's husband could have sex with her.

m. He told a female employee that she would have to "come over here and sexually harass me" if she wanted to be sent home from work.

n. He made jokes about sex and female bodies, including jokes about oral sex and large breasts.

o. In response to the comments described above, Howard and other female employees repeatedly told the plant manager not to speak to them that way, and that his comments were unprofessional.

p. In response, the plant manager often laughed or called employees who complained "bitches."

q. The plant manager made many of the comments described above right in front of Defendant's human resources manager, or at such a volume and proximity to the human resource manager's office that she heard them.

r. The plant manager frequently threatened to fire anyone who complained about him; this deterred some employees from complaining.

s. Nevertheless, within a week of the plant manager's promotion and frequently after that, employees complained to the human resources manager about the plant manager's harassment.

t. Employees also repeatedly complained to the human resources manager about Defendant's owner's harassment.

u. Nevertheless, no action was taken and the harassment continued.

v. As described in paragraph 20 below, the harassment of Howard culminated in the plant manager's termination of Howard's employment for pretextual reasons.

18. Since at least February 29, 2016, Defendant has engaged in unlawful employment practices at its Ithaca location, in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1). These unlawful practices include, but are not limited to, Defendant engaging and continuing to engage in race discrimination against Howard by subjecting her to

6

severe or pervasive race-based harassment, and by creating and maintaining a hostile work environment because of her race (Black), as follows:

    a. The plant manager used the term "nigger" in front of employees.

    b. On or about April 13, 2016, after seeing a picture of Howard's husband, who is Black, the plant manager told Howard that her husband should have a rope put around his neck and be dragged through a cotton field. The plant manager made this comment in front of several other employees, many of whom were horrified and told the plant manager he was racist.

    c. Howard immediately reacted angrily and yelled at the plant manager for making this comment.

    d. That same day, Howard complained to Defendant's human resources manager about this comment.

    e. The following day, the plant manager harangued Howard and asked her if she needed "Kool-Aid" (a stereotypical Black drink) to calm down. The plant manager made this comment in front of several other employees.

    f. Howard again yelled at the plant manager and told him that his comments were racially ignorant.

    g. He responded to Howard's criticism of his comments by saying that *she* was racist for not finding his comments funny.

    h. Howard promptly complained to Defendant's human resources manager about the plant manager's "Kool-Aid" comment.

    i. Nevertheless, no action was taken and the harassment continued.

  j. Howard told the plant manager, shortly after he made these comments and subsequently thereafter, that she no longer wished to interact with him in a friendly manner, discuss any non-work matters, or be called the familiar term "Jess."

  k. The plant manager repeatedly expressed displeasure with Howard's continued opposition, including complaining that she was not friendly enough to him even though he was her manager and that her face was too "mean."

  l. As described in paragraph 20 below, the harassment of Howard culminated in the plant manager's termination of Howard's employment for pretextual reasons.

19. Since at least September 10, 2015, Defendant has engaged in unlawful employment practices at its Ithaca location, in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1). These unlawful practices include, but are not limited to, Defendant engaging and continuing to engage in national-origin discrimination against Howard and similarly aggrieved employees with a national origin other than the United States by subjecting them to severe or pervasive national-origin harassment, and by creating and maintaining a hostile work environment because of their national origin, as follows:

  a. The plant manager, daily and often in a loud voice in the middle of Defendant's facility, made xenophobic comments.

  b. He asked employees why "you guys" take American jobs; stated that he hated or was "fucking sick" of immigrants; and complained that

        immigrants did not speak English, committed crimes, and were taking over America.

c. The plant manager told employees born in other countries to "go back" to the countries in which they were born.

d. The plant manager told an employee of Indian national origin that he could not wear a backpack on a work errand because he would be mistaken for a terrorist, and repeatedly called this employee a "sand nigger."

e. The plant manager repeatedly yelled at employees for speaking non-English languages, even while on a break from work, and told them not to speak other "fucking language[s]" because "we're in America, motherfuckers."

f. The plant manager mocked non-English languages and the accents of employees, including by speaking in gibberish and then claiming he was speaking employees' native languages.

g. Howard and other employees responded to the plant manager's xenophobic comments by asking him not to speak that way, and by telling him that his comments were inappropriate.

h. The plant manager made many of the above comments right in front of Defendant's human resources manager, or at such a volume and proximity to the human resources manager's office that she heard them.

i. Nevertheless, no action was taken and the harassment continued.

      j.      The plant manager frequently threatened to fire anyone who complained about him; this deterred some employees from complaining.

      k.      As described in paragraph 20 below, the harassment of Howard culminated in the plant manager's termination of Howard's employment for pretextual reasons.

20.    Since at least February 29, 2016, Defendant has engaged in unlawful employment practices at its Ithaca location, in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a). These unlawful practices include, but are not limited to, retaliatorily terminating the employment of Howard because she opposed and complained about harassment, as follows:

      a.      As discussed above in paragraphs 17(o); 18(c)-(d), (f), (h), and (j); and 19(g), Howard repeatedly and throughout her employment opposed the plant manager's harassment.

      b.      As discussed above in paragraphs 18(c)-(d), (f), (h), and (j), her opposition increased after the plant manager made comments about Howard's husband being dragged through a cotton field and Howard drinking "Kool-Aid" to calm down.

      c.      As discussed above in paragraphs 18(d) and (h), Howard complained about those comments to Defendant's human resources manager.

      d.      As discussed above in paragraphs 17(r) and 19(j), the plant manager frequently threatened to fire anyone who complained about him.

      e.      As discussed above in paragraphs 17(p) and 18(e), (g), and (k), the plant manager repeatedly expressed displeasure with Howard's opposition.

      f.      On or about July 5, 2016, shortly after Howard returned from an approved, approximately month-long trip to France, the plant manager fired Howard, ostensibly for failing to perform a task he insisted she perform.

      g.      The task was not a part of Howard's job, but instead was a part of the job regularly performed by another group of employees; Howard's laboratory technician supervisor was himself unable to perform that same task.

      h.      In fact, the plant manager fired Howard because of her complaints about and other opposition to his harassment.

21.    The effect of the practices complained of in paragraphs 17-20 above has been to deprive Howard, similarly aggrieved female employees, and similarly aggrieved employees with a national origin other than the United States of equal employment opportunities and otherwise adversely affect their status as employees because of their race, sex, or national origin.

22.    Since at least September 10, 2015, Defendant has willfully failed, in violation of Sections 711(a) and (b) of Title VII, 42 U.S.C. § 2000e-10(a) and (b), to post and keep posted notices that have been prepared or approved by the Commission setting forth excerpts from or summaries of the pertinent provisions of Title VII and information pertinent to the filing of a charge or complaint.

23.    The unlawful employment practices complained of in paragraphs 17-20 above were and are intentional.

24.    The unlawful employment practices complained of in paragraphs 17-20 above were and are done with malice or with reckless indifference to the federally protected rights of Howard and other similarly aggrieved female employees and employees with a national origin other than the United States.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A.      Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from creating a hostile work environment based on race, sex, or national origin, and from retaliating against any employee who engages in activity protected by Title VII.

B.      Order Defendant to institute and carry out policies, practices, and programs that provide equal employment opportunities for Black employees, female employees, and employees with a national origin other than the United States, and that eradicate the effects of its past and present unlawful employment practices.

C.      Order Defendant to make whole Howard by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement of Howard or front pay in lieu of reinstatement.

E.      Order Defendant to post and keep posted the notices required by Section 711(a) of Title VII, 42 U.S.C. § 2000e-10(a) and assess appropriate civil fines against the Defendant pursuant to Section 711(b) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-10(b).

G.      Order Defendant to make whole Howard and similarly aggrieved female employees and employees with a national origin other than the United States by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraphs 17-20 above, including job search expenses and medical expenses, in amounts to be determined at trial.

H. Order Defendant to make whole Howard and similarly aggrieved female employees and employees with a national origin other than the United States by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of in paragraphs 17-20 above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

I. Order Defendant to pay Howard and similarly aggrieved female employees and employees with a national origin other than the United States punitive damages for its malicious and reckless conduct, as described in paragraphs 17-20 above, in amounts to be determined at trial.

J. Grant such further relief as the Court deems necessary and proper in the public interest.

K. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Dated:  September 13, 2018

JAMES L. LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
131 M Street, N.E.
Washington D.C. 20507


JEFFREY BURSTEIN
Regional Attorney

jeffrey.burstein@eeoc.gov

NORA E. CURTIN
Supervisory Trial Attorney
nora.curtin@eeoc.gov

 /s/ Daniel Seltzer
Daniel Seltzer
Trial Attorney
Equal Employment Opportunity Commission
New York District Office
33 Whitehall Street, 5th Floor
New York, NY 10004
Tel: 212-336-3701
Fax: 212-336-3623
Email: daniel.seltzer@eeoc.gov

14